IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| WILLIAM BARCELONA, : | |
| Plaintiff, : | |
| | Case No. 3:06CV382 |
| vs. : | |
| | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | |
| Security Administration, : | |
| Defendant. : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

When health problems prevent a person from working, the Social Security Administration potentially provides two main types of financial assistance: Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). To qualify for either, applicants must convince the Social Security Administration that they are under a "disability." *Id*. Narrowed to its statutory meaning, the term "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent a person from engaging in "substantial gainful activity." *See Bowen*, 476 U.S. at 469-70; *see also Colvin v.*

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) ("disability" has same meaning in DIB or SSI context).  A DIB or SSI applicant bears the ultimate burden of establishing that he or she is under a disability.[2]

Plaintiff William Barcelona applied for DIB and SSI on June 18, 2003 asserting that beginning on May 28, 2002, he was under the following disabilities: lumbosacral degenerative disk disease, type II diabetes, hypertension, and obesity.  (Tr. 69, 88; Doc. #6 at 2).

The Social Security Administration denied Barcelona's DIB and SSI applications based on Administrative Law Judge (ALJ) Melvin A. Padilla's decision that Barcelona was not under a disability.  (Tr. 18-31).  Because ALJ Padilla's non-disability decision constituted a final administrative agency determination, it is subject to judicial review, *see* 42 U.S.C. §405(g), which Barcelona is now due.

The case is presently before the Court upon Barcelona's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #8), Barcelona's Reply (Doc. #9), the administrative record, and the record as a whole.

Barcelona seeks an Order remanding this case, at a minimum, to the Social Security Administration to correct certain errors.  The Commissioner seeks an Order affirming the ALJ's decision.

---

[2] *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

2

**II.    ADDITIONAL BACKGROUND**

Barecelona was age fifty-six when ALJ Padilla issued his non-disability decision. Barcelona was therefore considered a person of "advanced age" for purposes of resolving whether he was under a disability. *See* 20 C.F.R. §1563(e); *see also* Tr. 28.

Barcelona graduated from high school in 1968. (Tr. 94). His employment has involved work as a security guard and a fast-food cook. (Tr. 89, 398-99).

The parties have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence with citations to the record. *See* Doc. #6 at 1-12; Doc. #8 at 1-4. In light of this, and upon consideration of the complete record, there is no need to fully reiterate the parties' descriptions. Still, identifying two pertinent medical sources will help frame further review.

Barcelona relies on the opinions of his treating physician, Dr. Patel, who completed, in December 2004, a medical assessment of Barcelona's work abilities. Dr. Patel essentially believed that Barcelona was limited to performing sedentary work. (Tr. 334-38). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." §404.1567(a). Those who can only perform sedentary work fall into the least able category of work ability, under the Commissioner's regulations. *See* 20 C.F.R. §404.1567(a)-(e).

Barcelona maintains that pursuant to the so-called Grids, his limitation to sedentary work – given his age, education, and work experience – his ability to perform

3

only sedentary work establishes that he is under a disability under the Grids, §§ 201.06, 201.12.[3] Barcelona thus reasons, that if Dr. Patel's sedentary-work opinion is fully credited, the Grids required the ALJ to conclude that Barcelona is under a disability.

The Commissioner disagrees with Barcelona's contentions regarding Dr. Patel's opinions and instead contends that the ALJ properly relied on the records of another treating physician, Dr. Tadicherla, and four medical sources for the Ohio Bureau of Disability Determinations.

## III.  STANDARDS OF REVIEW AND THE ALJ'S DECISION

### A.  The Social Security Act and Standards of Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part

---

[3] The Grids, or more properly the "Medical-Vocational Guidelines," are found at 20 C.F.R. Subpart P, Appendix 2. The Grids provide a shorthand method of evaluating a claimant's vocational abilities – age, education, and work abilities. "When a claimant's functional abilities exactly meet the definition for a category of work, *i.e.,* light work ... the Grids allow the ALJ to take notice of the number of jobs available in the national economy.... When, however, the claimant's characteristics do not exactly match the definition of, for example, light work, his residual functional capacity is used as the proper framework to determine whether he is disabled." *Templeton v. Commissioner of Social Sec.*, 215 Fed.Appx. 458, 463 (6th Cir. 2007)(citations omitted).

4

*Richardson v. Perales*, 402 U.S. 389, 401 (1977)).  It consists of "'more than a scintilla of evidence but less than a preponderance...*"  Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). And the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence."  *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *See Bowen*, 478 F3d at 746.  This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

### B.     The ALJ's Decision

ALJ Padilla's decision that Barcelona was not under a disability resulted from his five-step sequential evaluation of the evidence.  *See* Tr. 23-31.  The Regulations require

5

ALJs to resolve disability claims under the sequential method, *see* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[4]  A dispositive finding at any single step of the evaluation ends the inquiry.  *Colvin*, 475 F.3d at 730.  If fully applied, the sequential evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The parties' contentions create issues regarding Steps 4 and 5 of ALJ Padilla's decision.  At Step 4 the ALJ assessed Barcelona's residual functional capacity as follows:

> The claimant retains the ability to perform medium work, as such work is defined for Social Security purposes, if he is restricted from work on ladders or at unprotected heights, limited to frequent balancing, stooping, kneeling, crouching, and crawling, and limited to inside work in a temperature controlled environment.

---

[4] The remaining references will cite to the pertinent DIB Regulations with full knowledge of the corresponding and equally applicable standards in the SSI Regulations.  *See Colvin* , 475 F.3d at 730.

6

(Tr. 28).

Under the Regulations, "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

Applying Barcelona's RFC at Step 5, ALJ Padilla found Barcelona able to perform a significant number of medium or sedentary jobs that were available in the national and regional economies. (Tr. 28). This led to ALJ Padilla's ultimate conclusion that Barcelona was not under a disability and hence not eligible to receive DIB or SSI. (Tr. 27-29).

## IV. DISCUSSION

### A. The Parties' Contentions

Barcelona summarizes his contention in one main issue:

> Whether the administrative law judge's finding concerning residual functional capacity for medium work, and hence, his finding that Mr. Barcelona could perform other work, is supported by substantial evidence where the administrative law judge failed to provide any reason for rejecting Treating Physician Patel's opinion and Dr. Patel's opinion is consistent with the affects of obesity based on Social Security's own rulings?

(Doc. #6 at 1).

The Commissioner contends that the ALJ properly rejected Dr. Patel's opinions. The Commissioner reasons, "The fact that Dr. Patel's opinion diverged dramatically from all the other medical evidence of record, which the ALJ highlighted in his analysis, is a valid, legally supportable reason for discounting her opinions." (Doc. #8 at 6)(relying on

7

20 C.F.R. §404.1527(d)(4)). The Commissioner further argues that Dr. Patel's opinion was based on Barcelona's obesity during a time when his weight had spiked to 335 pounds. According to the Commissioner, the ALJ properly relied on the other physicians of record because they had examined Barcelona when he was in his more typical weight range (275-300 pounds) and because those physicians did not believe that Barcelona was limited to sedentary work. (Doc. #8 at 6-7).

### B. Medical Source Opinions

Resolution of the parties' contentions begins with the treating physician rule. When applicable, the treating physician rule requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinions of a non-treating physician. *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §404.1527(d)(2), (f). The treating physician's opinion must have two characteristics before the treating physician rule applies: (1) it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) it "is not inconsistent with other substantial evidence of record." 20 C.F.R. §404.1527(d)(2); *see Wilson*, 378 F.3d at 544.

If a treating physician's opinion is not given controlling weight, the ALJ must continue to weigh it under a number of factors set forth in the Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the

opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

A mandatory procedural requirement appears in the Regulations in the following promise: "We will always give good reasons in our notice of determination of decision for the weight we give [the claimant's] treating source's opinion." *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. §404.1527(d)(2)). This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *See Wilson*, 378 F.3d at 544. In addition, the reason-giving requirement "exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she [or he] is not, unless some reason for the agency decision is supplied." *Id*. (quoting in part *Snell v. Apfel*, 177 F.3d 125, 134 (2nd Cir. 1990)).

As to other types of medical opinions, more weight is generally placed on the opinions of an examining medical source rather than the opinions of a non-examining source. *See* 20 C.F.R. §404.1527(d)(1). Yet the opinions of non-examining state agency medical sources have some value and can, under some circumstances, be given significant weight. *See* Social Security Ruling 96-6p.

The Regulations specifically mandate ALJs to weigh the opinions of state agency medical sources by "using relevant factors," including supportability, consistency, and

9

specialization. 20 C.F.R. §404.1572(d), (f)(2)(ii).

No matter what type of medical source (treating, examining, or non-examining) is at issue, his or her ultimate opinion that a person is under a "disability" is not automatically accepted. *See* 20 C.F.R. §404.1527(e). This is so because in the context of social security cases, the term "disability" describes an administrative concept, not a pure medical finding. 20 C.F.R. §404.1527(e). It therefore remains the duty of the Social Security Administration – often through an ALJ – to resolve a claimant's disability status by, in part, weighing the medical source opinions under the above standards. *See id.*; *see also Bass II v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *see, e.g., Rogers*, 486 F.3d at 242-43.

Whether the ALJ applied the correct legal standards in Barcelona's case is the next inquiry.

### C. Analysis

The ALJ did not cite or separately mention the treating physician rule or its two required elements at any point in his decision. He likewise did not cite to the Regulation describing the treating physician rule, 20 C.F.R. §404.1527(d)(2), or to any applicable case or any Social Security Ruling. *See* Tr. 24-25. Absent a definitive statement of the controlling legal principles or a citation to the controlling Regulation – neither of which the ALJ provided, *see* Tr. 25-25 – the ALJ's reasoning must be further studied to determine what legal standards the ALJ applied.

Doing so in this case, reveals no indication that the ALJ followed the Regulation's

procedure when weighing Dr. Patel's opinion. *See* Tr. 24-25. The ALJ did not state, or even hint, that he first considered Dr. Patel's opinion under the treating physician rule. *See id.* And the ALJ failed to indicate that once he declined to apply the treating physician rule to Dr. Patel's opinion, he continued to weigh Dr. Patel's opinion under the remaining regulatory factors. *See id.* The continued-weighing requirement is particularly essential because "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its noncontrolling status notwithstanding." *Rogers*, 486 F.3d at 242. Without assurance that the ALJ weighed Dr. Patel's opinion using this procedure under these legal standards, the ALJ's decision does not comply with the Regulations. 20 C.F.R. §404.1527(d)(2)-(6); *see Rogers*, 486 F.3d at 242; *see also Wilson*, 378 F.3d at 544-45.

The Commissioner, through a Ruling, explains the need for ALJ's to comply with continued-weighing by emphasizing:

> Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p.

The ALJ's only possible reference to a regulatory factor arises in his finding that Dr. Patel's opinion was inconsistent with those of four state agency reviewing physicians.

Yet, in the context of the ALJ's decision in this case, his "inconsistency" finding does not reveal that he weighed Dr. Patel's opinion as the Regulations require. If the ALJ meant that inconsistency provided a reason for not applying controlling weight under the treating physician rule, then the ALJ erred as a matter of law by not continuing to weigh Dr. Patel's opinion under the remaining regulatory factors. Or, if the ALJ's inconsistency finding constituted an application of the "consistency" factor in §404.1527(d)(4), the ALJ failed to first consider whether the treating physician rule applied.

Perhaps – as the Commissioner essentially urges – the ALJ found the single reason of "inconsistency" as a sufficient basis for both (1) not fully crediting Dr. Patel's opinion under the treating physician rule and (2) not placing any weight on Dr. Patel's opinion under the remaining regulatory factors. The ALJ's decision, however, contains no language indicating this analytical intention or meaning, and its omission deprives the ALJ of a good explanation for rejecting treating physician Dr. Patel's opinions – an error of law under the Regulations and caselaw. *See* 20 C.F.R. §404.1527(d)(2); *see also Rogers*, 486 F.3d at 242-43.

Turning to other medical sources, the ALJ did not weigh the four state agency physicians' opinions under the factors of the Regulations. *See* Tr. 24-25. This constituted an error of law because the Regulations mandated the ALJ to weigh those opinions "using relevant factors" including supportability, consistency, and specialization. 20 C.F.R. §404.1572(d), (f)(2)(ii).

The ALJ's failure to apply the correct standards of law does not automatically

12

require reversing his decision. There remains the possibility that the errors of law were harmless. *See Wilson*, 378 F.3d at 546-47. If harmless, the ALJ's decision must be affirmed despite containing errors of law. *See Bass II*, 499 F.3d at 512. When, then, does an error become harmless in social security cases?

An error that is merely *de minimis* or irrelevant may be considered harmless. *See id*; *see also Wilson*, 378 F.3d at 547. "For instance, if a treating physician's opinion is so patently deficient that the Commissioner could not possibly credit it...." *Wilson*, 378 F.3d at 547. Harmlessness can also arise when the ALJ's "decision has met the goal of §1527(d)(2) – provision of the procedural safeguard of reasons – even though she [now, he] has not complied with the terms of the Regulations." *Bowen,* 478 F3d at 747 (quoting *Wilson*, 378 F.3d at 547).

Neither party in this case directly addresses the issue of harmless error. The ALJ's errors were not harmless.

Dr. Patel based his sedentary-work opinion on the significant impact Barcelona's obesity had on his ability to perform only sedentary work activities tends to support Dr. Patel's opinion. In this manner, Dr. Patel provided a medical reason for the work limitation he set and consequently, his opinion was not so patently deficient that it could not be credited on remand. *Wilson*, 378 F.3d at 547. In addition, a review of the various medical source opinions of record does not reveal evidence that is so one-sided in the Commissioner's favor that the ALJ's errors could be deemed harmless. The records instead include a dispute between treating and non-treating medical sources that has yet to

be weighed under the mandatory procedures and applicable factors required by the Regulations. To find harmless error, the Court would, in effect, have to fully credit the four state agency physicians' opinions even though those opinions have never been weighed as required by law. Consequently, a finding of harmless error is not warranted.

Similarly, the ALJ's identification of a conflict between Barcelona's daily activities and Dr. Patel's belief that he could only do sedentary work is not supported by substantial evidence. This is so because the ALJ failed to consider whether Barcelona's daily activities, especially those involving lifting or walking, reveal that he could perform more than sedentary work during an eight-hour workday. Barcelona's testimony instead tends to be consistent with only brief or intermittent activities of daily living, rather than revealing he has the ability to perform work activities above the sedentary level during an eight-hour workday. *See* Tr. 391-98. The ALJ's emphasis on Barcelona's daily activities as a reason for rejecting Dr. Patel's opinion was not supported by substantial evidence and does not render harmless the ALJ's errors of law. *Cf. Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)(Posner, J.)("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home.... The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other places of paid work.").

Accordingly, Barcelona's challenges to the ALJ's decision are well taken.

## V.     REMAND IS WARRANTED

If an ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under sentence four of  42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of his disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Barcelona, however, is entitled to an Order remanding this case to the Social Security Administration for further proceedings pursuant to sentence four of §405(g) due to the ALJ's failure to weigh the medical source opinions of record as required by the Regulations.  On remand, the Commissioner and the ALJ should be directed to (1) re-evaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; (2) to explain the evaluation of the medical sources as required by the Regulations, Rulings, and case law;

15

and (3) to determine anew whether Barcelona is under a "disability" within the meaning of the Social Security Act.

Accordingly, the case should be remanded to the Commissioner and the ALJ under sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff William Barcelona is under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


January 15, 2008                              s/ Sharon L. Ovington
                                            Sharon L. Ovington
                                      United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).